## CAMPBELL, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

**St. Louis Court of Appeals, January 8, 1907.**

1. **STREET RAILWAYS: Excessive Speed: Negligence Per se.** Running a motor car at a speed in excess of the speed limit provided by ordinance is negligence *per se*, and where such excessive speed is the proximate cause of a collision with a traveler, such traveler has a right of action for injuries sustained thereby.

2. ————: **Instruction: Abstract Proposition: Vigilant Watch.** In an action for injuries received by the plaintiff in a collision with a motor car, where one of the acts of negligence alleged was failure of the motorman to observe the vigilant watch ordinance, an instruction defining the negligence of the motorman in that respect in general terms, substantially the language of the ordinance, was nothing more than an abstract declaration of

law and erroneous; it is not the duty of the court to tell the jury what the law is, but what they must find to arrive at a correct verdict.

3. ————: Negligence: Sole Cause. In such an action it is not necessary that the negligence of the defendant should be the sole cause of the injury; the plaintiff might be guilty of negligence in going upon the track without looking or listening; if such negligence was prior in point of time to that of the motorman, whose negligence in failing to avert the injury if he saw or by the exercise of ordinary care could have seen the approaching peril was the cause of the injury, the street railway company was liable.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

REVERSED AND REMANDED.

*Boyle & Priest, George W. Easley* and *Edward T. Miller* for appellant.

(1) The court erred in giving plaintiff's instruction numbered 1. Smith v. Hardesty, 31 Mo. 411; Holwerson v. Railway, 157 Mo. 216 and cases therein cited; Oates v. Railway, 168 Mo. 535; Guyer v. Railroad, 174 Mo. 344; Moore v. Railway, 176 Mo. 528; Railroad v. Railroad, 78 Mo. App. 253. (2) The court erred in giving plaintiff's instruction numbered 2. Authorities above cited under point 1. Kries v. Railroad, 148 Mo. 321. (3) The court erred in giving plaintiff's instruction numbered 3. Fisher v. Lead Co., 156 Mo. 479. (4) The court erred in refusing defendant's requested instruction B. Grocer Co. v. Railway, 89 Mo. App. 534; Cogan v. Railway, 101 Mo. App. 179.

*Guy A. Thompson* and *A. R. Taylor* for respondent.

(1) A mere omission in an instruction given for one party is harmless if the element omitted is contained in an instruction given for the other party. Edwards v. Railroad Co., 94 Mo. App. 36; Anderson v.

Railroad Co., 161 Mo. 411; Perrette v. Kansas City, 162 Mo. 238. (2) As to the objection to plaintiff's instruction numbered 3, it is urged that the court erred in giving this instruction because it was a mere abstract statement of the law. (3) And the instruction is a correct statement of the law, and is definitive of nothing more than the ordinary care required of a motorman of this car. Sluder v. Transit Co., 88 S. W. 643; Kolb v. Transit Co., 102 Mo. App. 143; Gebhart v. Transit Co, 97 Mo. App. 373.

BLAND, P. J.—The appeal is from a judgment recovered by plaintiff in an action for personal injuries and damages to his automobile, caused by a collision with one of defendant's street cars, traveling west on Delmar avenue, on June 19, 1903, in the city of St. Louis. The evidence shows that Delmar avenue runs east and west, and at the time of the collision, defendant maintained and operated a double street car line in the center of said street; that Kingshighway runs north and south and crosses Delmar avenue at right angles; that on the day of the accident, plaintiff was driving his automobile north on the east side of Kingshighway (the west side being torn up for repairs) and when he arrived near the crossing of Delmar avenue, he turned to the west side of Kingshighway, the better to enable him to see east on Delmar and to ascertain if a car was coming from that direction. Plaintiff testified that from the west side of Kingshighway, he could see three hundred feet east on Delmar avenue and saw no car, and then turned back to the east side of the street and approached the crossing of Delmar at a speed of about six miles an hour, looking and listening all the while for a car; that when within about forty feet of the tracks, he saw a car about two hundred and forty feet east, coming at a speed of twenty-five to thirty miles per hour; that from the speed the car was traveling, he

thought he could not clear the track in time to avoid a collision and immediately disconnected the power of his automobile, and did everything he could to stop it, but was unable to do so before it ran upon the track, where it was struck by the car, causing damage to the automobile and divers cuts, sprains and injuries to himself.

John Doyle, an experienced motorman, testified that a car running at a speed of fifteen or twenty miles per hour could be stopped in from one hundred to one hundred and twenty-five feet, and one running at a speed of twenty-five or thirty miles per hour in from one hundred and twenty-five to one hundred and fifty feet.

Plaintiff offered in evidence an ordinance of the city of St. Louis, limiting the speed of cars, at the point in question, to fifteen miles per hour; also what is commonly known as the vigilant watch ordinance. The evidence tends to show that the automobile weighed about one ton, and plaintiff testified it was in perfect condition.

William R. Morgan, a witness for defendant and an automobilist, testified that plaintiff's automobile, running at a speed of fifteen miles per hour, could have been stopped in about thirty feet, and at a speed of six miles per hour in about twenty feet.

Defendant's evidence tends to show that the automobile first came into view from behind a coal wagon when within ten feet of the track, and when the car was about the same distance from the crossing, and that the automobile was running as fast as the car; that when it first came into view the mortorman did everything in his power to stop the car and avoid a collision.

The petition assigns as negligence, first, that the motorman failed to keep a vigilant watch ahead for vehicles moving toward the track, etc., and failed to exercise ordinary care to stop the car and avoid the collision; second, that the car was operated at a dangerous and reckless speed; third, that the car was running at a

speed exceeding fifteen miles per hour, in violation of a city ordinance (No. 21113). The answer was a general denial and the following plea of contributory negligence:

"Further answering said amended petition, defendant states that the injuries, if any, sustained by plaintiff, and the damage, if any, to plaintiff's automobile, were caused by the plaintiff's own negligence in approaching the track without looking and listening for street cars, or without heeding what he saw or heard, if he did look or listen; but, on the contrary, causing his automobile to be operated so carelessly and negligently as to bring it into collision with a street car."

Omitting formal and introductory matter, plaintiff's first instruction is as follows:

"And if the jury believe from the evidence that defendant's said servants in charge of said car were causing said car to be run at a speed in excess of fifteen miles an hour at the time of said collision and that such excess of speed directly contributed to cause said collision and plaintiff's said damages and injuries.

"And if the jury find from the evidence that the plaintiff, before and whilst on said crossing, exercised ordinary care to look and listen for an approaching car and to avoid injury therefrom, then plaintiff is entitled to recover."

Omitting like matters, the second instruction is as follows:

"And if the jury find from the evidence that defendant's motorman in charge of such car, as it ran toward said crossing of defendant's tracks and Kingshighway, was causing said car to be run at a high and negligence speed,

"And if the jury find from the evidence that such speed of said car directly contributed to cause said collision,

"And if the jury find from the evidence that defen-

dant's said servant did not exercise ordinary care in so running said car to and upon said crossing at such speed,

"And if the jury believe from the evidence that the plaintiff exercised ordinary care to look and listen for said car and to avoid injury therefrom, the plaintiff is entitled to recover."

"Plaintiff's third instruction is as follows:

"The court instructs the jury that it was the duty of the motorman of defendant on the car mentioned in the evidence to keep a vigilant watch for all vehicles either upon defendant's track or moving toward it, and upon the first appearance of danger to such vehicle, to stop the car within the shortest time and space practicable with the means and appliances at hand and with safety to said car and its passengers, if any, and a failure to do so, if he did so fail, was negligence."

It will be noted that the first instruction predicates plaintiff's right to recovery on the violation of the speed ordinance, and told the jury that if the excess of speed "directly contributed to cause said collision and plaintiff's said damages and injuries," plaintiff was entitled to recover, if he was without fault. The violation of the speed ordinance was negligence *per se* (Moore v. St. Louis Transit Company, 95 Mo. App. 728). But it afforded plaintiff no cause of action, unless it caused the injury. If plaintiff was without fault, and the excessive speed at which the car was operated, directly contributed to his injury, then the negligent speed was the proximate cause of the injury, and afforded plaintiff a right of action, and we can see no just ground for criticising the instruction. What is said of the first applies also to the second instruction given for plaintiff. Plaintiff's third instruction correctly defined the duty of the motorman, in respect to keeping a vigilant watch ahead, etc., and properly declared that the motorman's failure to perform this duty would be negligence, but it stopped

there, and hence did not instruct. It is nothing more than an abstract declaration of law which the jury was not competent to apply to the facts of the case. It is not the duty of the court to tell the jury what the law of the case is, but what they must find to arrive at a correct verdict. [Fisher v. Central Lead Company, 156 Mo. l. c. 495-6, 56 S. W. 1107.]

Defendant asked the following instruction, which the court refused to give:

"Before the plaintiff is entitled to a verdict, he must show, by the greater weight of all the credible evidence in the case, that the negligence charged against defendant was the sole cause of his alleged injuries; but to entitle the defendant to a verdict in its favor it need not show that the plaintiff's negligence was the sole cause of his alleged injuries. If the negligence of plaintiff either caused or directly contributed in part to causing his alleged injuries, he cannot recover and your verdict must be for defendant."

In the main, the instruction is a correct declaration of law but it is inapplicable to the facts in the case under the first assignment of negligence, for it is not the law that this negligence charged against defendant should be the *sole* cause of the injury to entitle plaintiff to recover. If, as defendant's evidence tends to show, plaintiff was guilty of some negligence in failing to stop his automobile before reaching the track, his negligence was prior in point of time to that of defendant's motorman, and he is entitled to recover, notwithstanding his prior negligence, if the motorman saw, or by the exercise of ordinary care, could have seen plaintiff's position of peril in time to have stopped his car and avoided the collision. [Klockenbrink v. Railroad, Co., 81 Mo. App. 351, s. c. 172 Mo. 678, 72 S. W. 900.]

For error in giving instruction No. 3 for plaintiff, the judgment is reversed and the cause remanded. All concur.