[No. 23187–1–I.   Division One.   January 16, 1990.]

GLEN THOMAS, *Plaintiff,* v. HELMUT W. GAERTNER,
ET AL, *Appellants,* GARY MOSE, ET AL,
*Respondents.*

*R.E. Percival* and *Bird & Percival,* for appellants.

*Cheryl Weibel* and *Dennis Jordan,* for respondents.

COLEMAN, C.J.—This action arose out of a contract between Helmut and Margaret Gaertner (Gaertners) and Glen Thomas for the purchase and sale of real property,

which was subsequently rescinded. The Gaertners (sellers) appeal the trial court's order on summary judgment in favor of "C" Jays Realty and its agents, Gary Mose and Donald Gass, ordering that "C" Jays Realty and its agents have no liability for any of Thomas's (the buyer's) attorney fees assessed against the Gaertners. We reverse and remand for further proceedings.

On March 19, 1987, the Gaertners and "C" Jays Realty entered into a listing agreement which appointed "C" Jays Realty the exclusive agent for the listing and sale of lot 18, Forest Loop Road, which was owned by the Gaertners. Gary Mose and Donald Gass were licensed real estate agents with "C" Jays Realty. Gass signed the listing agreement, and Mose was the selling agent.

On March 29, 1987, Thomas and the Gaertners entered into a contract for the purchase and sale of lot 18. The listing sheet signed by the Gaertners indicated that lot 18 contained 1.44 acres. On April 29, 1987, the sale closed. Thomas paid the Gaertners $2,000 and executed a note for the balance in the amount of $6,600, secured by a deed of trust. The statutory warranty deed conveyed only a portion of lot 18. In June 1987, Thomas discovered that he had not been deeded the entire 1.44 acres; the actual conveyance contained only approximately .72 acres of the 1.44 acres of lot 18. Thomas subsequently ceased making payment on the note.

On February 8, 1988, the Gaertners sent Thomas a notice of default. On February 29, 1988, Thomas filed a complaint against the Gaertners and "C" Jays Realty and its agent Mose for restraint of trustee sale and abatement in purchase price or rescission. The Gaertners answered, counterclaiming against Thomas and cross–claiming against "C" Jays Realty and Mose. The answer and cross claim were subsequently amended to include Gass as a third party defendant.

Thomas moved for summary judgment. On July 28, 1988, the trial court granted the motion for summary judgment, ordering rescission of the sale, canceling the note and deed

of trust, and restraining the trustee's sale. The trial court further ordered that Thomas was entitled to damages and costs, including attorney fees, which were to be determined at trial.

On September 7, 1988, "C" Jays Realty and its agents, Mose and Gass, moved for summary judgment seeking an order that they were not liable under any theory for any of Thomas's attorney fees that may be assessed against the Gaertners.[1] On October 3, 1988, the trial court granted the motion, ordering that "C" Jays Realty and its agents had no liability for any of Thomas's attorney fees that may be assessed against the Gaertners. On November 1, 1988, the trial court ordered the Gaertners to pay Thomas's attorney fees in the amount of $6,500. This appeal followed. The trial date has been continued indefinitely pending this appeal.

The sole issue before this court is whether the trial court erred by granting summary judgment in favor of "C" Jays Realty and its agents Mose and Gass.

Summary judgment is proper where the pleadings, depositions, affidavits, and admissions on file show that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985); *Knott v. Liberty Jewelry & Loan, Inc.,* 50 Wn. App. 267, 270, 748 P.2d 661, *review denied,* 110 Wn.2d 1024 (1988). Making the same inquiry as the trial court, this court must view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party; summary judgment should be granted only if reasonable persons could reach but one conclusion from all of the evidence. *Knott,* at 270–71.

---

[1] In addition to seeking an order that they were not liable for Thomas's attorney fees, "C" Jays Realty and its agents stated in their motion for summary judgment that they would exercise their option to purchase that portion of the 1.44 acres that Thomas did not receive and convey it to Thomas in lieu of damages. On November 1, 1988, the trial court ordered "C" Jays Realty and its agents to convey the property to Thomas.

The general rule in Washington is that one's own attorney fees will not be awarded as part of the costs of litigation unless authorized by contract, by statute, or in certain equitable actions. *Barnett v. Buchan Baking Co.,* 108 Wn.2d 405, 408, 738 P.2d 1056 (1987). *Armstrong Constr. Co. v. Thomson,* 64 Wn.2d 191, 390 P.2d 976 (1964). Illustrative of the latter ground is where the natural and proximate consequences of the acts or omissions of a party to an argument or an event have exposed another person to litigation with a third person, equity may allow attorney fees as an element of consequential damages. *Western Comm'ty Bank v. Helmer,* 48 Wn. App. 694, 699–700, 740 P.2d 359 (1987). Three elements are needed in order to create this equitable right to attorney fees: "(1) a wrongful act or omission by A towards B; (2) such act or omission exposes or involves B in litigation with C; and (3) C was not connected with the original wrongful act or omission of A towards B." *Herzog Aluminum, Inc. v. General Am. Window Corp.,* 39 Wn. App. 188, 191 n.1, 692 P.2d 867 (1984) (quoting *Aldrich & Hedman, Inc. v. Blakely,* 31 Wn. App. 16, 639 P.2d 235, *review denied,* 97 Wn.2d 1007 (1982)). The attorney fees that the wronged party may recover under this rule, however, are the wronged party's, not the attorney fees of the third person with whom the wronged party is drawn into litigation and for which the wronged party may be held liable. *Interlake Porsche + Audi, Inc. v. Bucholz,* 45 Wn. App. 502, 523, 728 P.2d 597 (1986), *review denied,* 107 Wn.2d 1022 (1987). The ABC rule does not address this latter situation; therefore, if there is to be a recovery of the attorney fees which appellants were ordered to pay Thomas, it must be upon some theory independent of the ABC rule.[2]

Appellants rely upon *Armstrong* in support of their contention that these fees are recoverable. *Armstrong,*

---

[2]Recovery of appellants' own attorney fees incurred in defending against Thomas's claims and any attorney fees appellants may incur in the action pending against "C" Jays Realty, Mose, and Gass are not an issue at this time. Appellants do argue that they are entitled to their own attorney fees; however, that issue was not raised below and therefore is not properly before this court.

however, does not provide direct support for this position. That case involved a construction contract in which the owners, contractor, and architects were parties. The contractor, Armstrong Construction Company, brought the action in order to foreclose a lien against the owners, Thomson, for work performed and materials furnished in the early phases of the construction of a house. The owners joined the architects as third party defendants, seeking return of the $2,100 they had advanced to the architects and $950 in attorney fees which they had incurred in defending the lien foreclosure action brought by the contractor. *Armstrong*, at 194.

The trial court awarded the contractor a partial judgment against Thomson, a decree of lien foreclosure in the amount of $407.40, and ordered Thomson to pay the contractor $250 for its attorney fees. *Armstrong*, at 194. The trial court allowed Thomson judgment against the third party defendants architects for the architects' fees advanced and allowed Thomson indemnification of the $407.40 and the $250 attorney fees, but disallowed Thomson's claim for his own attorney fees of $950. *Armstrong*, at 194. Thomson appealed.

The *Armstrong* court held that the trial court properly excluded Thomson's claim for his own attorney fees of $950 because both the builder and architect were privy to the construction contract and, therefore, neither could be classified as third persons for purposes of the ABC rule. *Armstrong*, at 196. That portion of the trial court's order awarding Thomson judgment against the third party defendants for the $250 attorney fees which Thomson was ordered to pay to the contractor was not appealed and was not addressed in the Supreme Court opinion. Therefore, *Armstrong* is not controlling on the issue before this court.

█ The issue in the instant case appears to be one of first impression. Our research has not disclosed any cases directly on point. In analyzing this issue, we initially note that the procedural posture of this case is confusing. Trial has not yet occurred on the claims that appellants are

asserting against "C" Jays Realty, Mose, and Gass. Consequently, appellants have not yet established any right to indemnification for moneys they have been required to pay Thomas as a result of the judgment and orders entered in that portion of the action. However, assuming for purposes of this opinion that appellants establish their right to recover, clearly one of the items that they are entitled to recover as an element of their damages is the amount that they were required to pay in the previous action for Thomas's attorney fees.[3]

> The general rule . . . denies recovery for counsel fees and other expenses of litigation beyond taxable costs in the instant suit. However, as to such fees and expenses incurred in a previous suit, a different rule applies, and, for such outlay caused by the defendant's actionable wrong or breach of contract, a recovery is allowed.

C. McCormick, *Damages* § 66, at 246 (1935).

Allowing appellants to seek recovery of this amount as an element of general damages from the party whose wrongful act involved him in litigation with Thomas and caused him to have to pay Thomas's attorney fees does not violate the general rule relating to recovery of attorney fees. As a general proposition, parties cannot recover their own attorney fees, regardless of the merit of their position or the outcome of the litigation. Generally, parties must finance their own litigation; however, a party required to pay an opposing party's attorney fees in a previous action is not necessarily precluded from recovering that amount as an element of general damages in a subsequent suit brought against the party causing the damage. *See* McCormick, at 246.

Whether we analyze the issue in the instant case under principles of indemnity, which "transfers liability from one who has been compelled to pay damages to another who should bear the entire loss", *Interlake Porsche,* at 523, or breach of duty principles which require the foreseeability of damages, the result does not in any sense undermine the

---

[3]While it is not absolutely clear in the record, presumably Thomas was entitled to his attorney fees by virtue of attorney fee provisions in the purchase and sale agreement.

general rule controlling recovery of attorney fees. We therefore hold that the trial court erred in concluding that there is no theory of law which would provide for the recovery of the $6,500 appellants were required to pay Thomas.

The trial court's order granting summary judgment is reversed and the cause remanded for further proceedings.

WEBSTER and PEKELIS, JJ., concur.